NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| E.S., a minor, by and through his Guardian ad Litem, ELIZABETH SANCHEZ, individually, and CHARLES SANCHEZ, individually, | : : : : : | **Civil Action No. 20-1027-JXN-AME** |
|  | : : | **OPINION & ORDER** |
| Plaintiffs, | : : |  |
| v. | : : |  |
| ELIZABETH BOARD OF EDUCATION, et al., | : : |  |
| Defendants. | : : : |  |

**ESPINOSA**, Magistrate Judge

      This matter comes before the Court on the motion by defendants Elizabeth Board of Education, Joseph Troiano, Jennifer Campel, and Christina Brito (collectively, the "Elizabeth BOE Defendants") to compel the New Jersey Division of Child Protection and Permanency ("DCPP"), a non-party to this action, to respond to a document subpoena. DCPP opposes the motion. The Court has considered the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the Court grants the motion to compel production and will order DCPP to respond to the subpoena conditioned upon entry of an appropriate protective order.

## I.   BACKGROUND

This civil rights action arises out of a June 21, 2017 incident at the LaCorte School in Elizabeth, New Jersey.[1] On that date, E.S., then a twelve-year-old student, was in the gym with his classmates. Mr. Troiano, the school music teacher, was also in the gym, preparing for the graduation of the school's eighth-grade class. According to the Complaint, the children became rowdy and disruptive, and E.S. began laughing after he was tickled by classmates. At that point, the Complaint alleges, Mr. Troiano "lost his cool and physically assaulted Plaintiff E.S." (Second Am. Compl. ¶ 16.) Plaintiffs, E.S. and his parents Elizabeth and Charles Sanchez (collectively, "Plaintiffs"), allege Mr. Troiano forcefully grabbed E.S. by the arm, punched him in the chest, and physically blocked E.S. from moving. E.S. immediately reported the incident to the school secretary and Principal Campel, who in turn notified E.S.'s parents. The Elizabeth Police Department responded to the scene.

Thereafter, Vice Principal Brito contacted DCPP and completed a referral report, as required by law but, according to the Complaint, "deliberately" failed to disclose that the incident had been videorecorded. (*Id.* ¶ 28.) Regarding this point, the Complaint alleges: "A closed-circuit camera located in the gym captured the incident on video;" however "Plaintiffs Elizabeth and Charles Sanchez were initially denied access to the video despite repeated requests to the school." (*Id.* ¶¶ 23, 25.) According to the Complaint, Principal Campel "made false representations to Plaintiffs . . . and the police" and also "falsely denied the existence of the video." (*Id.* ¶¶ 24-25.) Vice Principal Brito, the Complaint further alleges, likewise concealed the video from DCPP, "to avoid any liability from the impending DCP&P investigation." (*Id.* ¶¶ 27-

---

[1] The factual synopsis set forth herein is drawn from the allegations of the Second Amended Complaint ("Complaint"), the currently operative pleading. The Court considers the Complaint's alleged facts and asserted legal claims for the purpose of evaluating the scope of appropriate discovery, as required to decide this motion. However, this Opinion makes no findings regarding the truth of the alleged facts or the merits of the claims.

28.) Plaintiffs themselves contacted DCPP about a month after the incident to alert them to the existence of the video, but to their knowledge, Plaintiffs aver, "Defendants never produced the video to DCP&P." (*Id.* ¶ 29.)

Plaintiffs filed this lawsuit on January 30, 2020, asserting federal civil rights claims and state common law claims. Following the Court's decision on a motion to dismiss their original pleading, Plaintiffs filed an Amended Complaint on January 15, 2021. A motion for partial dismissal of the Amended Complaint, pending when this motion to compel discovery was filed, was granted in part and denied in part. Plaintiffs thereafter filed the Second Amended Complaint. It asserts the following causes of action: assault and battery; negligence, intentional infliction of emotional distress; a 42 U.S.C. § 1983 claim for violation of substantive due process rights under the Fourteenth Amendment; a 42 U.S.C. § 1983 claim for retaliation for exercising rights under the First Amendment; a claim for neglect under 42 U.S.C. § 1983; and a *Monell* claim under 42 U.S.C. § 1983.[2]

On or about August 11, 2021, the Elizabeth BOE Defendants served DCPP with the subpoena at issue here. The subpoena requests "[a]ll documents relating to the Matter of Child Physical Abuse Concerning [E.S.] at the Nicholas S. LaCorte Peterstown School #3, Intake ID # 20341204." (Donegan Cert., Ex. A.) DCPP did not produce the records. Rather, by letter dated September 8, 2021, DCPP informed the Elizabeth BOE Defendants that because its records are confidential, they cannot be released unless a specific exemption applies under New Jersey statute N.J.S.A. 9:8-6.10a. DCPP further directed the Elizabeth BOE Defendants to a statutory process in which a court must conduct an *in camera* review of the documents, to determine if their release is authorized.

---

[2] The Court notes there is a pending motion for partial dismissal of the Second Amended Complaint.

This motion to compel production of the DCPP records followed.

## II.   DISCUSSION

The Elizabeth BOE Defendants argue DCPP must produce the subpoenaed records under Federal Rules of Civil Procedure 26 and 45 because they relate to Plaintiffs' claims that the Elizabeth BOE Defendants concealed information from DCPP, in particular the existence of video footage of the incident. Their motion to compel indicates that the surveillance video and other records in the possession of DCPP will refute the allegations of the Complaint in whole. Thus, the Elizabeth BOE Defendants contend they are entitled to the DCPP records as relevant and appropriate discovery within the purview of Rule 26, without need to subject the records to the review process and production standard set by New Jersey law.[3]

Rule 26 provides that, in federal civil litigation, discovery may be obtained regarding any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . .." Fed. R. Civ. P. 26(b)(1). It is axiomatic that under the Rule, all relevant material is discoverable unless an applicable evidentiary privilege is asserted. *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). In the context of a discovery request served upon a non-party, as here, Federal Rule of Civil Procedure 45 provides, in relevant part, that a court "must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Discovery requests directed to a non-party by subpoena are likewise subject to the

---

[3] No party demonstrates definitively whether a video recording of the alleged incident giving rise to Plaintiffs' claims actually exists. Rather, each side merely asserts or implies that it does: (i) Plaintiffs by claiming they were "denied access" to the video by the Elizabeth BOE Defendants (Second Amended Compl. ¶¶ 23, 25); and (ii) the Elizabeth BOE Defendants by asserting that the video does not depict the events as pled by Plaintiffs (Moving Brief at 1, ECF 39-1).  To the extent the surveillance video exists and is included among the DCPP file, its production may, as the Elizabeth BOE Defendants argue, directly refute Plaintiffs' allegations.

parameters of permissible discovery set by Rule 26. *See Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007).[4]

DCPP, in opposition, does not contend the subpoenaed records are irrelevant or otherwise outside the bounds of Federal Rule of Civil Procedure 26. Nor does it assert the records are protected by a federally recognized privilege. Rather, DCPP argues that this Court must apply New Jersey law prohibiting disclosure of the records except in certain circumstances expressly authorized by statute. *See* N.J.S.A. 9:6-8.10a. It further argues that under no circumstances does the statute permit records to be released directly to a third party. Instead, DCPP contends that, where disclosure of DCPP records is requested, the governing New Jersey statute first requires a court to review the records *in camera* to determine whether further "disclosure is necessary for determination of an issue before the court." N.J.S.A. 9:6-8.10a(b)(6).

Additionally, DCPP contends this Court must also abide by New Jersey caselaw, imposing an even higher level of scrutiny that set forth in the statute. Citing *State v. Cusick*, 219 N.J. Super. 452 (App. Div. 1987), DCPP asserts disclosure of its records is barred unless a court finds the following: (1) disclosure of the information is essential to the resolution of the issue before the court; (2) the information is unavailable from any alternate source; and (3) the information, if revealed, could have the effect of changing the outcome of the trial. *See Cusick* at 457-59, 463. If the reviewing court finds those requirements satisfied, New Jersey statute authorizes the court to disclose the records, in whole or in part, to "the law guardian, attorney or other appropriate person." N.J.S.A. 9:6-8.10a(b)(6).

---

[4] Although this discovery dispute comes before the Court on the issuing party's motion to compel a response to subpoena, rather than the responding third party's motion to quash, the Court nevertheless applies the limits set by Rule 45 on the scope of appropriate third-party discovery.

DCPP's argument contravenes Third Circuit precedent concerning the interplay between the Federal Rules of discovery and any asserted state-law privilege or confidentiality standard in a case, such as this one, involving claims for relief under both federal and state law. The Third Circuit has held that "when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." *Wm. T. Thompson Co. v. Gen'l Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982). Particularly apt here, the Third Circuit applied this principle in a case presenting section 1983 and related state law claims to reject application of a similar Pennsylvania statute mandating the confidentiality of records maintained by the state's child protective services agency. *See, generally, Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000).

In *Pearson*, child protective services agencies appealed a district court order compelling them to provide information in their possession concerning one of the defendants in the case. *Id.* at 60-61. In relevant part, they sought protection from discovery on grounds that the information was privileged and confidential under two Pennsylvania child protection statutes. *Id.* at 62-63. The court began its analysis by noting that "the general framework for determining the scope of allowable discovery for cases in federal courts is provided by Federal Rule of Civil Procedure 26 . . .." *Id.* at 65. It further noted that the party seeking to protect the confidentiality of information discoverable under Rule 26 may either assert an applicable privilege pursuant to Federal Rule of Evidence 501, or "where such a privilege is not available . . . petition the court for a protective order that limits discovery in accordance with Rule 26(c)." *Id.* at 65-66. Cautioning that federal law disfavors privileges, *Pearson* recognized the important confidentiality interests served by the Pennsylvania statutes invoked by the appellants yet declined to recognize any federal privilege under Rule 501 based on those statutes. *Id.* at 70-72. The court clarified, however, that its

rejection of the requested privilege did not constitute a determination that the sensitive

information at issue in the dispute must be produced without limitation. Rather, it held that

confidentiality could be safeguarded pursuant to the district court's power to issue protective

orders under Rule 26(c). *Id.* at 72.

Here, DCPP expressly disavows any assertion of privilege, making clear it merely

contends this Court should apply the New Jersey statute relating to release of DCPP records, not

asking the Court to recognize a state law evidentiary privilege in this federal civil rights action.

Yet, DCPP's position that its obligation to produce the subpoenaed records is governed by a

confidentiality and non-disclosure standard prescribed by state law is a distinction without a

difference. At best, its argument that the records cannot be disclosed to the Elizabeth BOE

Defendants unless the Court first reviews them *in camera* according to the level of scrutiny

articulated by the New Jersey Superior Court, Appellate Division, in *Cusick*, essentially asks this

Court to depart from the well-settled standard under Rule 26 in evaluating a discovery request.

DCPP identifies no controlling authority requiring the approach it urges the Court to take in

deciding this motion to compel.[5]

Nevertheless, the foregoing does not lead to the inevitable conclusion that the records

sought by the subpoena at issue here must necessarily be produced. Rather, this Court bears an

obligation to consider the propriety and scope of the discovery request within the rubric of Rule

---

[5] DCPP's citation to *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) is inapposite to the question of whether a federal court hearing a case asserting federal civil rights claims must abide by the confidentiality procedures and standards set by state statute. In *Ritchie*, the United States Supreme Court reviewed an order entered by the Supreme Court of Pennsylvania determining that the criminal defendant in that case was entitled under the Constitution to access the state's child abuse investigation files, despite the confidentiality of those files under state statute. *Id.* at 43-46.The Court found the Pennsylvania Supreme Court had erred in finding the Sixth Amendment Confrontation Clause had been violated by denying the defendant access to the child protective agency files. *Id.* at 54. However, the Supreme Court also rejected the State's argument that the child abuse investigative records were absolutely barred from disclosure as privileged, noting the state statute did permit disclosure under certain circumstances, and affirmed the state Supreme Court's order to the extent it remanded the case for a materiality review. *Id.* at 58, 61.

26(b)(1). That rubric, by its terms, contains sufficient flexibility for the Court to give due consideration and weight to the function confidentiality plays in DCPP's ability to accomplish its very serious mission of protecting New Jersey's children from abuse and neglect. Indeed, as DCPP stated in its brief, "[DCPP] files typically contain extraordinarily sensitive information regarding victims, their families, foster parents and referents. [DCPP] obtains this information in an atmosphere of understanding that the confidentiality of all communications with caseworkers and treating professionals is statutorily protected." (Opp. Br. at 4, ECF 43).

In addition to relevance, Rule 26 requires the Court to consider the requested discovery's proportionality, which expressly includes, among other things, the "importance of the discovery in resolving the issues" at stake in the action and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Rule authorizes the Court, for good cause shown, to issue an order limiting discovery or forbidding inquiry into certain matters "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Likewise, Rule 45 authorizes the Court to quash or modify a subpoena seeking protected material and/or imposing an undue burden. Fed. R. Civ. P. 45(d)(3)(A).

Here, the Elizabeth BOE Defendants have tailored the document request to records pertaining to the June 21, 2017 incident in litigation. Not only do Plaintiffs' claims arise out of that incident of alleged abuse of the minor E.S. but the very investigation conducted by the DCPP into the incident has been put in issue by Plaintiffs themselves. They allege the Elizabeth BOE Defendants "failed to disclose that the incident was captured on video" and failed to turn over the video to DCPP. (Second Am. Compl. ¶¶ 27-29.) As the Elizabeth BOE Defendants argue, the subpoenaed DCPP records pertaining to its investigation of the incident go to the core

of the wrongdoing alleged in this litigation and are thus crucial to the Elizabeth BOE

Defendant's defense against Plaintiffs' claims. Without those records, the Elizabeth BOE

Defendants would suffer prejudice in presenting their defense.

Weighed against the importance of the discovery the Elizabeth BOE Defendants seek is,

of course, DCPP's equally important confidentiality interest. Though the Court concludes that

the New Jersey law circumscribing disclosure of DCPP documents does not control in the

specific circumstances of this case, the Court acknowledges the strong interest in limiting such

disclosure reflected by the state legislature's codification of those limitations. Here, however,

strict vindication of that confidentiality interest must give way to the broad rules of discovery.

That is especially so given that the legislature's preference in favor of confidentiality can be

protected by an appropriately crafted confidentiality order pursuant to Rule 26(c), which will

provide heighted protection of the records at issue while also permitting the Elizabeth BOE

Defendants access to material directly relevant to the core of this action. *See Pearson*, 211 F.3d

at 73. As the Third Circuit held in *Pearson*, when addressing a situation presenting similar

competing interests to those before the Court on this motion, "Rule 26(c) provides district courts

with the power to formulate a detailed solution that reflects the concerns of particular individual

disputes. To that extent, it provides a superior mechanism for the resolution of the present

dispute than does Federal Rule of Evidence 501." *Id.*

Accordingly, the Court finds that DCPP, in its explanation of the importance of

maintaining the confidentiality of its records, has demonstrated, with the requisite specificity,

that it would suffer injury if the records were disclosed without limitation and thus has shown

good cause for entry of a protective order under Rule 26(c). *Id.* at 73-74 (citing *Pansy v. Borough

of Stroudsburg*, 23 F.3d 772, 787 (3d Cir.1994) and *Publicker Indus., Inc. v. Cohen*, 733 F.2d

1059, 1071 (3d Cir.1984)). Rule 26(c) empowers the Court to fashion an order meeting the needs

of the case and the requirement for protection, providing a range of available mechanisms,

including:

> (1) that the disclosure or discovery not be had; (2) that the disclosure or
> discovery may be had only on specified terms and conditions, including a
> designation of time or place; (3) that the discovery may be had only by a
> method of discovery other than that selected by the party seeking
> discovery; (4) that certain matters not be inquired into, or that the scope of
> the disclosure or discovery be limited to certain matters; [and] (5) that
> discovery be conducted with no one present except persons designated by
> the court . . ..

Fed. R. Civ. P. 26(c). In this case, the competing interests of access to relevant information

needed to defend against Plaintiffs' claims versus maintaining the confidentiality of that

information to the greatest extent possible would be served by imposing, at a minimum, the

following conditions on disclosure: limiting disclosure of the DCPP records only to attorneys

representing the parties to this action (i.e., "attorneys' eyes only designation"); authorizing

DCPP to redact from any records disclosed the names and other identifying information of minor

witnesses, minor interviewees, and any other minor providing information in connection with

DCPP's investigation of the subject incident; prohibiting any copying or reproduction of the

records produced; and requiring prompt return to DCPP of the records upon conclusion of this

litigation.

      The Court recognizes that additional limitations might be appropriate but also recognizes

DCPP may be in a superior position to suggest such protections. Moreover, the Court notes the

Elizabeth BOE Defendants have expressed a willingness to modify or limit the scope of their

subpoena after engaging in discussions with DCPP about the production. Accordingly, the Court

will direct the parties to meet and confer regarding the scope of the subpoena and/or entry of an

appropriate protective order, and to thereafter submit their joint proposal to the Court.

III.    CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that the Elizabeth BOE Defendants have demonstrated the discovery sought by subpoena to the DCPP, as described above, is appropriate under Rules 26(b)(1) and 45(a), subject to appropriate limitations under Rule 26(c). Accordingly,

**IT IS** on this 10th day of June 2022,

**ORDERED** that, pursuant to Federal Rules of Civil Procedure 26(b) and 45(a), the Elizabeth BOE Defendants' motion to compel non-party DCPP to respond to the subpoena served on August 11, 2021 [ECF 39] is **GRANTED IN PART**; and it is further

**ORDERED** that the Elizabeth BOE Defendants and DCPP shall meet and confer for the purpose of modifying and/or limiting the subpoena, consistent with this Opinion, and shall thereafter submit a stipulation and proposed order setting forth their agreed-to limitation and protections under Rule 26(c); and it is further

**ORDERED** that, in the event the Elizabeth BOE and DCPP are not able to agree on a form of order, they shall each file their respective proposed orders together with a letter explaining the differences in the proposals; and it is further

**ORDERED** that the above-referenced stipulation and proposed order, or alternatively, competing proposed orders, shall be filed within two weeks of the date of this Order.

 /s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge