<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.S., a minor, by and through his Guardian *ad Litem*, ELIZABETH SANCHEZ, ELIZABETH SANCHEZ, individually, and CHARLES SANCHEZ, individually,<br><br>    Plaintiffs,<br><br>v.<br><br>ELIZABETH BOARD OF EDUCATION, JOSEPH TROIANO, JENNIFER CAMPEL, and CRISTINA BRITO,<br><br>    Defendants. | No. 20cv1027 (EP) (AME)<br><br>**OPINION** |

**PADIN, District Judge.**

Presently before the Court is Defendants Elizabeth Board of Education ("Elizabeth BOE"), Jennifer Campel, and Cristina Brito's (collectively, the "Moving Defendants") motion to dismiss Counts IV, V, VI, and VII of Plaintiffs' second amended complaint under Federal Rule of Civil Procedure 12(b)(6). D.E. 50. The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons stated below, the Moving Defendants' motion is **GRANTED in part** and **DENIED in part**.

I.   **BACKGROUND**[1]

    **A. Factual Background**

In June 2017, Plaintiff E.S. was a 12-year-old student at the Nicholas S. La Corte School, a public elementary school in Elizabeth, New Jersey.  D.E. 49 ¶¶ 12-14.  E.S. and his parents, Plaintiffs Elizabeth and Charles Sanchez, allege that on June 2, 2017, E.S.'s music teacher, non-moving Defendant Joseph Troiano, "lost his cool," forcefully grabbed E.S. by the arm, and then "punched E.S. in the chest."  *Id.* ¶¶ 14, 16-17.  Troiano then "proceeded to block and intimidate [E.S.] with his physical presence."  *Id.* ¶ 17.  "A closed-circuit camera . . . captured the incident on video."  *Id.* ¶ 22.

E.S. immediately reported the incident to the La Corte School's Vice Principal, Defendant Jennifer Campel.  *Id.* ¶ 19.  E.S.'s parents, Elizabeth and Charles, were notified of the incident.  *Id.* ¶ 19.  The Sanchezes, in turn, reported the incident to the local police department, complained to school administrators, filed a formal police complaint against Troiano, posted a petition regarding the incident on Change.Org, and filed tort claims notices in anticipation of filing this lawsuit.  *Id.* ¶¶ 21, 41-45.

Plaintiffs allege that "[w]hat followed was a cover up and a subsequent harassment and intimidation campaign by the Defendants designed to thwart E.S. from asserting his rights."  *Id.* ¶ 22.  Plaintiffs aver that Campel made certain, otherwise unspecified "false representations to the [Sanchezes] and the police."  *Id.* ¶ 24.  Campel also falsely denied, to unspecified persons, that the video capturing the incident existed.  *Id.* ¶ 26.  And Plaintiffs further allege that they were initially denied access to the video.  *Id.* ¶ 25.

---

[1] For the purposes of this Opinion, the Court accepts as true all of the second amended complaint's well-pled factual allegations.

The La Corte School's Principal, Defendant Cristina Brito, contacted the Department of Child Protection and Permanency (the "DCPP") on behalf of the La Corte School and completed a referral report. *Id.* ¶ 27. This referral to DCPP was made "against Plaintiffs." *Id.* ¶ 47. Brito, in completing that report, likewise failed to disclose that the incident was captured on video. *Id.* ¶ 27. Plaintiffs aver that "[t]his was done deliberately to avoid any liability from the impending [DCPP] investigation." *Id.* ¶ 28. Moreover, notwithstanding that Plaintiffs informed DCPP about the existence of the video about a month after the incident, Defendants never produced the video to DCPP. *Id.* ¶ 29.

E.S. and his family were also subject to a harassment and intimidation campaign by Troiano, Campel, and Brito. *Id.* ¶ 30. Campel followed E.S. around school in an effort to scare him and make him feel uncomfortable. *Id.* ¶ 31. Campel took photos of Mr. Sanchez in his car when Mr. Sanchez picked E.S. up from school. *Id.* ¶ 32. Troiano entered E.S.'s classroom and stood near his locker on numerous occasions in order to harass and intimidate him. *Id.* ¶ 36. Troiano, on multiple occasions, gave dirty looks to E.S. and his brothers (who also attended the La Corte School). *Id.* ¶ 37. And "[u]pon information and belief, Defendants hired a private investigator that visited the Sanchez[es'] home as part of an ongoing effort to harass, intimidate and retaliate against E.S. and his family for their exercise of their protected First Amendment rights." *Id.* ¶ 46. Brito's referral to DCPP was likewise "intended to interfere with Plaintiffs' legitimate complaints and petitions for redress" and done "to intimidate Plaintiffs for their legitimate exercise of their First Amendment rights." *Id.* ¶¶ 47-48.

Plaintiffs further allege that, "[u]pon information and belief, employees of Defendant Elizabeth [BOE] have an unspoken . . . custom of using the [DCPP] investigatory arm of the state government against parents of students who exercise their First Amendment rights." *Id.* ¶ 51.

3

Moreover, "Troiano was never reprimanded for [his actions on June 2, 2017] or subsequent intimidation efforts, and, upon information and belief, continues to serve as a music teacher at the La Corte School." *Id.* ¶ 52. This is the result of Elizabeth BOE's failures to properly train its employees and reprimand teachers that cause direct harm to students. *Id.* ¶ 54.

### B. Procedural History

Plaintiffs initiated this action on January 30, 2020. D.E. 1. Plaintiffs' original complaint asserted the following causes of action: Count I – Assault and Battery; Count II – Negligence; Count III – Intentional Infliction of Emotional Distress ("IIED"); Count IV – 42 U.S.C. § 1983; Count V – N.J.S.A. § 18A:37-13, Harassment; Count VI – 42 U.S.C. § 1986, Action for Neglect to Prevent; and Count VII – N.J.S.A. § 2A:15-5.12, for punitive damages. *Id.* Plaintiffs asserted all counts against all named Defendants. *Id.*

On December 23, 2020, Judge Cecchi dismissed the following claims with prejudice: (1) Plaintiffs' assault and battery claim (Count 1) as against Campel, Brito, and the Elizabeth BOE (but not against Troiano); (2) Plaintiffs' IIED claim (Count III) as against the Elizabeth BOE (but not against the other Defendants); and (3) Plaintiffs' claim under the Anti-Bullying Bill of Rights Act, N.J.S.A. § 18A:37-13 (Count V) as against all Defendants. D.E. 14. Judge Cecchi also dismissed Plaintiffs' claims under 42 U.S.C. § 1983 (Count IV) and 42 U.S.C. § 1986 (Count VI) without prejudice as against all Defendants. *Id.*

On January 15, 2021, Plaintiffs filed their first amended complaint. D.E. 16. Plaintiffs asserted the following causes of action therein: Count I – Assault and Battery; Count II – Negligence; Count III – IIED; Count IV – 42 U.S.C. § 1983, Fourteenth Amendment Due Process Violation; Count V – 42 U.S.C. § 1983, First Amendment/Free Speech/Right to Petition

Retaliation and Intimidation; Count VI – 42 U.S.C. § 1986, Neglect/Refusal to Prevent; and Count VII – 42 U.S.C. § 1983, Municipal Liability. *Id.*

On April 12, 2022, Judge Neals dismissed some of these claims. *See* D.E.s 47, 48. More specifically, Judge Neals dismissed Plaintiffs' 42 U.S.C. § 1986 claim (Count VI) with prejudice. D.E. 48. He dismissed Plaintiffs' Fourteenth Amendment-based § 1983 claim (Count IV) against Campel and Brito without prejudice, but allowed it to proceed as against Troiano. Judge Neals dismissed Plaintiffs' First Amendment and *Monell*-based § 1983 claims (Counts V and VII), in their entirety, without prejudice. D.E. 48. Judge Neals also dismissed all claims against the La Corte School, then identified in Plaintiffs' pleading as an additional stand-alone defendant, agreeing with Defendants that "the school is not a separate entity" subject to independent liability. D.E. 48.

On May 12, 2022, Plaintiffs filed their second amended complaint, D.E. 49; this is the pleading that is subject to the present motion to dismiss filed by the Moving Defendants. Plaintiffs' second amended complaint asserts the following causes of action:

- Count I – Assault and Battery, which, in accordance with Judge Cecchi's earlier ruling, is pending against Troiano only;

- Count II – Negligence, which is pending against all four named Defendants;

- Count III – IIED, which, in accordance with Judge Cecchi's earlier ruling, is pending against Campel, Brito, and Troiano only;

- Count IV – 42 U.S.C. § 1983, Fourteenth Amendment Due Process Violation, which, as pled, now appears to be asserted against Troiano only;

- Count V – 42 U.S.C. § 1983, First Amendment/Free Speech/Right to Petition Retaliation and Intimidation, asserted against all Defendants;

5

- Count VI – 42 U.S.C. § 1986, Neglect/Refusal to Prevent, which has already been dismissed with prejudice by Judge Neals; and

- Count VII – 42 U.S.C. § 1983, Municipal Liability, which, although purportedly asserted against all Defendants, is, in reality – and as implicitly recognized by Judge Neals – viable against Elizabeth BOE only.

On June 6, 2022, the Moving Defendants filed their present motion to dismiss Plaintiffs' § 1983 claims (at Counts IV, V, and VII) and § 1986 claim (at Count VI) under Federal Rule of Civil Procedure 12(b)(6). D.E. 50. On July 5, 2022, Plaintiffs filed their opposition to that motion. D.E. 60.[2] The Moving Defendants filed their reply on July 18, 2022. D.E. 64.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. However, the allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. As the moving party, the defendant bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9

---

[2] Plaintiffs' July 5, 2022 opposition brief was unsigned. *See* D.E. 60 at 29. On January 24, 2023, Plaintiffs corrected this deficiency via the filing of a signed copy of that brief. *See* D.E. 77.

(3d Cir. 2011).  For the purposes of the motion, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff.  *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

### III. ANALYSIS

#### A. 42 U.S.C. § 1983, Generally

Plaintiffs assert claims pursuant to 42 U.S.C. § 1983, which, in relevant part, provides that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

#### B. Plaintiffs' Fourteenth Amendment § 1983 Claim, Count IV

In Count IV of their second amended complaint, Plaintiffs assert a § 1983 Fourteenth Amendment-rooted substantive due process claim.  D.E. 49.  Judge Neals has previously ruled that this claim has been adequately pled against Troiano.[3]  *See* D.E. 47 at 6.  Count IV, as currently pled, appears to be asserted solely against Troiano.  *See* D.E. 49 at p. 18 (requesting that the Court "[e]nter judgment [on this count] in favor of Plaintiffs against Defendant Troiano.").  The Moving Defendants nonetheless request that the Court formally dismiss Count IV as against them.  The Court will do so.

Insomuch as Count IV is intended to be asserted against Campel and Brito, the Court, as Judge Neals did, finds that the facts alleged by Plaintiffs fail to support a viable Fourteenth Amendment claim against either of those Defendants.  "Section 1983 provides remedies for

---

[3] Troiano, likewise, does not seek dismissal of this count.  Indeed, Troiano, who is a non-moving party, has already answered Plaintiffs' second amended complaint.  *See* D.E. 69.

7

deprivations of rights established by the Constitution, including substantive due process under the Fourteenth Amendment." *Chainey v. St.*, 523 F.3d 200, 219 (3d Cir. 2008) "[T]o establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Id.* (citing *United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400-02 (3d Cir. 2003)). "Deprivation violates due process only when it shocks the conscience, which encompasses only the most egregious official conduct." *Id.* (citations and internal quotations omitted).

Here, Plaintiffs allege substantially the same facts against Campel and Brito in their second amended complaint that were alleged in their first amended complaint: Plaintiffs again contend that Campel intentionally harassed E.S. and his family after the incident by following him around school, D.E. 49 ¶ 31; they also again allege that Campel photographed Charles Sanchez while he was picking up E.S. from school. *Id.* ¶ 32. They likewise again allege that Defendants – through an unidentified intermediary – hired a private investigator to investigate Plaintiffs. *Id.* ¶ 46. Plaintiffs again claim that Brito withheld the video of the incident from DCPP during its investigation. *Id.* ¶ 27. And Plaintiffs again allege that "E.S. had a right to a full and honest investigation and disclosure to his parents of the circumstances occurring during the time Defendant Troiano [was] responsible for E.S.'s bodily security." *Id.* ¶ 90.

Judge Neals found that these same factual allegations failed to support a viable substantive due process claim against Campel and Brito. D.E. 47 at 6-8. He ruled, *inter alia*, that these purported actions undertaken by Campel and Brito, even if true, failed to shock the conscience in a manner which supports a viable § 1983 claim. *Id.* at 7. This Court fully agrees with Judge Neals on this point. Plaintiffs, moreover, have failed to present any additional facts in their second

amended complaint that suggest that either Campel or Brito engaged in any other untoward behavior towards Plaintiffs. They have accordingly failed to plead any additional facts upon which the Court could now find that Campel or Brito behaved in a manner which shocks the conscience in a manner which gives rise to a substantive due process claim against either of these individuals. The Court will accordingly dismiss Count IV against Campel and Brito. Plaintiffs, moreover, have already received several opportunities to plead adequate facts in support of this claim. They have failed to do, and dismissal of this claim is now accordingly with prejudice as against Brito and Campel.[4] *See Taylor v. Comhar, Inc.*, No. CV 16-1218, 2022 WL 102334, at *4 (E.D. Pa. Jan. 11, 2022) (dismissing plaintiff's claims with prejudice for failing to remedy the deficiencies identified earlier). Consistent with Judge Neals' prior ruling, Count IV remains pending against Troiano.

### C. Plaintiffs' First Amendment § 1983 Claim, Count V

In Count V of their second amended complaint, Plaintiffs assert a § 1983 First Amendment-retaliation claim against all Defendants. D.E. 49. Judge Neals previously dismissed this claim, in its entirety, as inadequately pled. *See* D.E. 47 at 8-9.

To state a claim for First Amendment retaliation under Section 1983, a plaintiff must allege that: (1) he "engaged in a protected activity"; (2) the "defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights"; and (3) there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex ret. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted).

Plaintiffs, in their second amended complaint, now specifically allege that they engaged in numerous activities protected by the First Amendment, including, *inter alia*, reporting the incident

---

[4] Insomuch as Plaintiffs purport to assert this claim against Elizabeth BOE, it is dismissed for the reasons discussed in Section III.D. of this Opinion.

9

involving E.S. and Troiano to the local police department, complaining to school administrators, filing a formal police complaint against Troiano, posting a petition regarding the incident on Change.Org, and filing tort claims notices in anticipation of filing this lawsuit. D.E. 49 ¶¶ 41-45. Defendants do not suggest that any of these activities are not protected by the First Amendment.

Plaintiffs further allege that after the incident, E.S. and his family were subject to a harassment and intimidation campaign by Troiano, Campel, and Brito. *Id.* ¶ 30. They specifically allege that Campel followed E.S. around school in an effort to scare him and make him feel uncomfortable and took photos of Mr. Sanchez in his car when Mr. Sanchez picked E.S. up from school. *Id.* ¶¶ 31, 32. Plaintiffs also specifically allege that Troiano entered E.S.'s classroom and stood near his locker on numerous occasions in order to harass and intimidate him and gave dirty looks to E.S. and his brothers on multiple occasions. *Id.* ¶¶ 36, 37. Brito's referral to DCPP is likewise alleged to be "intended to interfere with Plaintiffs' legitimate complaints and petitions for redress" and done "to intimidate Plaintiffs for their legitimate exercise of their First Amendment rights." *Id.* ¶¶ 47-48. Plaintiffs further allege, "[u]pon information and belief, [that] Defendants hired a private investigator that visited the Sanchez[es]' home as part of an ongoing effort to harass, intimidate and retaliate against E.S. and his family for their exercise of their protected First Amendment rights." *Id.* ¶ 46.

Plaintiffs, in asserting the foregoing allegations, have cured the pleading deficiencies identified by Judge Neals. Indeed, Plaintiffs have now alleged a number of specific activities protected by the First Amendment. *See, e.g., Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (citation and quotation marks omitted) ("[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.") (citation and quotation marks omitted); *Posey v. Swissvale Borough*, Civil Action No. 2:12-cv-955, 2013 WL

989953, at *8 (W.D. Pa. Mar. 13, 2013 ("filing a police report is [a] First Amendment-protected activity"). Plaintiffs have also alleged specific retaliatory actions taken by the Defendants in response to those activities that might, when assuming all facts in the light most favorable to Plaintiffs, deter a person of ordinary firmness from exercising these rights. *See Iron Bar, LLC v. Dougherty*, No. CV 19-9170, 2021 WL 363706, at *5 (D.N.J. Feb. 3, 2021) ("Whether retaliation would be sufficient to deter a person of ordinary firmness 'is generally a question of fact' and not suitable for resolution on a motion for dismiss.") (quoting *Thomas v. Independence Tp.*, 463 F.3d 285, 296 (3d Cir. 2006)). For the foregoing reasons, the Court will now allow this claim, Count V, to proceed as against Brito, Campel, and Troiano.[5]

### D. Plaintiffs' *Monell* Claims Against Elizabeth BOE, Count VII

In Count VII, Plaintiffs assert a § 1983 municipal liability claim against Elizabeth BOE. This claim will be dismissed because Plaintiffs' second amended complaint fails to allege sufficient facts to state a plausible claim under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). "When a suit against a municipality is based on [Section] 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). In other words, "a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents," *Monell*, 436 U.S. at 694, but "it can be held responsible as an entity when the injury inflicted is permitted under

---

[5] Insomuch as Plaintiffs purport to assert this claim against Elizabeth BOE, it is dismissed for the reasons discussed in Section III.D. of this Opinion.

11

its adopted policy or custom," *Beck*, 89 F.3d at 971. It is for this reason that the Court will dismiss Counts IV and V as against Elizabeth BOE.

To establish municipal liability a plaintiff must: (i) demonstrate the existence of an unlawful policy or custom; (ii) that he suffered a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States; and (iii) that the policy or custom was the proximate cause of the alleged deprivation. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). For such a policy or custom claim to survive Rule 12(b)(6) dismissal, a plaintiff must demonstrate an "affirmative link" between the policy or custom and the particular constitutional violation he alleges, such as where the plaintiff shows that the municipality "had knowledge of similar unlawful conduct in the past, . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quotations and citation omitted).

A Section 1983 municipal liability claim may also be premised on a municipality's failure to properly train, supervise, or discipline its employees. *See Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation . . . under § 1983."). To plead such a claim, a plaintiff must demonstrate that any such failure "reflects a deliberate or conscious choice." *Roman*, 914 F.3d at 798 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)); *see also Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (explaining that a *Monell* claim that is "predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality").

Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."). "'Deliberate indifference' is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action . . . . Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (internal quotations, citations, and brackets omitted); *accord Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").).

Here, as with the prior complaint, Plaintiffs fail to allege sufficient facts to support a viable § 1983 municipal liability claim against Elizabeth BOE. As previously explained by Judge Neals:

> Plaintiffs' claim falls short of adequately alleging the elements of *Monell*. . . . [Here], Plaintiffs make the blanket assertion that Defendants have "maintained inadequate customs, policies, practices, supervision, and trainings that were likely to lead to the violation of individual civil rights" and that "Defendants' custom, policy, or repeated practices are tantamount to condoning and tacitly encouraging violations of student [sic] attending public school's liberty interest." Am. Compl. ¶¶ 85, 86. In doing so, Plaintiffs merely restate the elements of *Monell* liability, failing to "identify the offending custom or practice" or provide any "factual predicate for knowledge or acquiescence to any wrongful conduct by [Defendants]." *Schirmer v. Penkethman*, No. 10-1444, 2011 WL

13

> 1211324, at *4 (D.N.J. Mar. 28, 2011). Nor do Plaintiffs plead any facts that suggest a pattern of similar incidents such that Defendants' actions or inaction could be interpreted as encouraging the violation of Plaintiffs' rights.

D.E. 47 at 11-12.

Plaintiffs' second amended complaint fails to cure the deficient allegations asserted in the prior dismissed complaint. Plaintiffs, in support of their municipal liability claim now specifically allege: (1) that "employees of Defendant Elizabeth [BOE] have an unspoken . . . custom of using the [DCPP] investigatory arm of the state government against parents of students who exercise their First Amendment rights," D.E. 49 ¶ 51; and (2) that "Troiano was never reprimanded for [his actions on June 2, 2017] or subsequent intimidation efforts and continues to serve as a music teacher at the La Corte School" due to Elizabeth BOE's failures to properly train its employees and reprimand teachers that cause direct harm to students. *Id.* ¶¶ 52, 54. Plaintiffs, however, have again failed to plead any facts that suggest a pattern of similar incidents before the subject incident such that Defendants' actions or inaction could be interpreted as encouraging the violation of Plaintiffs' rights. And an isolated mistake or mere negligence by some municipal agent is not enough to satisfy the *Monell* standard. *Solomon v. Phila. Hous. Auth.*, 143 F. App'x 447, 457 (3d Cir. 2005); *Adams v. City of Atl. City*, 294 F. Supp. 3d 283, 301 (D.N.J. 2018).

Plaintiffs, then, have failed to adequately to address the Count VII deficiencies outlined by Judge Neals. *See* D.E. 47. Plaintiffs' municipal liability claim against the Elizabeth BOE – as well as all other underlying Section 1983 claims purportedly asserted that entity, at Counts IV and V – are accordingly dismissed with prejudice. *See, e.g.*, *Brown v. Cantineri*, No. 14-6391, 2017 WL 481467, at *2 (D.N.J. Feb. 6, 2017) ("Because I have already given [the plaintiff] one opportunity to amend, this dismissal is with prejudice."); *accord Foster v. Raleigh*, 445 F. App'x 458, 460 (3d Cir. 2011); *LeJon-Twin El v. Marino*, No. 16-2292, 2017 WL 1591856, at *4 (D.N.J.

Apr. 28, 2017); *Venditto v. Vivint, Inc.*, No. 14-4357, 2015 WL 926203, at *15 (D.N.J. Mar. 2, 2015).

### E. Plaintiffs' Claim Under 42 U.S.C. § 1986, Count VI, Remains Dismissed

Plaintiffs, in their second amended complaint, again assert a claim against Defendants for violation of 42 U.S.C. § 1986. Plaintiffs have done so notwithstanding that this claim has already been dismissed by Judge Neals, *with prejudice*. See D.E.s 47, 48. Plaintiffs' § 1986 claim, at Count IV, accordingly remains dismissed with prejudice, as against all Defendants.

### F. Summary of Plaintiffs' Pending Claims

For ease of reference, the Court provides the following summary of the still-pending claims asserted in Plaintiff's second amended complaint:

- Count I – Assault and Battery – now proceeding against Troiano only (per Judge Cecchi's December 23, 2020 Opinion and Order);

- Count II – Negligence – proceeding against all four named Defendants;

- Count III – IIED – now proceeding against Campel, Brito, and Troiano only (per Judge Cecchi's December 23, 2020 Opinion and Order);

- Count IV – 42 U.S.C. § 1983, Fourteenth Amendment Due Process Violation – now proceeding against Troiano only (per Judge Neals' April 12, 2022 Opinion and Order and this Opinion);

- Count V – 42 U.S.C. § 1983, First Amendment/Free Speech/Right to Petition Retaliation and Intimidation – now proceeding against Troiano, Campel, and Brito (per Judge Neals' April 12, 2022 Opinion and Order and this Opinion),

- Count VI – 42 U.S.C. § 1986 – dismissed with prejudice in its entirety (per Judge Neals' April 12, 2022 Opinion and Order and this Opinion reaffirming that decision).

- Count VII – 42 U.S.C. § 1983, Municipal Liability – dismissed with prejudice against Elizabeth BOE, and thus, dismissed with prejudice in its entirety, as Elizabeth BOE is

16

the only Defendant against whom this claim can be asserted (per Judge Neals' April 12, 2022 Opinion and Order and this Opinion).

IV. **CONCLUSION**

For the reasons above, the Moving Defendants' motion is **GRANTED in part**: Count IV is **DISMISSED WITH PREJUDICE** as against Brito, Campbell, and Elizabeth BOE; Count V is **DISMISSED WITH PREJUDICE** as against Elizabeth BOE; Count VI remains **DISMISSED WITH PREJUDICE** against all Defendants; Count VII is **DISMISSED WITH PREJUDICE** against Elizabeth BOE, who is the only Defendant subject to *Monell* liability. The Moving Defendants' motion is also **DENIED in part**: Count V may now proceed against Brito, Campel, and non-moving party Troiano.

Dated: January 25, 2023

_____
Evelyn Padin, U.S.D.J.